# BERRY *v.* UNITED STATES.

No. 336.   Argued February 4, 1941.—Decided March 3, 1941.

*Messrs. Ernest W. Gibson, Jr.* and *C. L. Dawson* for petitioner.

*Mr. Warner W. Gardner,* with whom *Solicitor General Biddle* and *Messrs. Julius C. Martin* and *Wilbur C. Pickett* were on the brief, for the United States.

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner sued the United States in a federal district court, alleging that he became totally and permanently disabled prior to December 1, 1919, while his policies of War Risk Insurance were in force and effect.[1] Trial was had and evidence heard. The trial judge declined to grant the government's request for a directed verdict in its favor. The jury found for petitioner. The government, without having made any motion either for a new trial or for judgment notwithstanding the verdict, took the case to the Circuit Court of Appeals. Upon review that court held plaintiff had not produced sufficient evidence to justify submission of the cause to the jury. The court did not, however, remand the case to the District Court for further proceedings, but reversed the judgment and dismissed the cause of action.[2]

The petition for certiorari presented two questions: First, whether there was sufficient evidence to sustain the verdict; Second, whether the Circuit Court of Appeals erred in dismissing the cause instead of remanding it for a new trial. This second question invoked our juris-

---

[1] Though petitioner alleged that his policies were in effect until December 1, 1919, in reality it was necessary for him to show that he became totally and permanently disabled prior to September 1, 1919. This variance in dates is not material, however.

[2] 111 F. 2d 615.

diction in order to obtain an authoritative construction of subdivision (b) of Rule 50 of the Rules of Civil Procedure. In part that subdivision provides: "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; . . ." Since the government made no such motion within 10 days after the verdict, petitioner urged here that the Circuit Court of Appeals was without power to dismiss the cause but should have remanded it for a new trial. But while this important point, upon which the Circuit Courts of Appeals are not in complete agreement,[3] is one of the two questions upon which the petition for certiorari rested, there is no occasion for us to reach it here. For we find that there was sufficient evidence to sustain the jury's verdict, and we hold that the District Court properly denied the government's motion for a directed verdict in its favor.

Rule 50 (b) goes further than the old practice[4] in that district judges, under certain circumstances, are now expressly declared to have the right (but not the mandatory duty) to enter a judgment contrary to the jury's verdict

[3] Compare *Conway* v. *O'Brien*, 111 F. 2d 611, 613 (C. C. A. 2d), reversed, *post*, p. 492, with *Pruitt* v. *Hardware Dealers Mutual Fire Ins. Co.*, 112 F. 2d 140, 143 (C. C. A. 5th). And see *United States* v. *Halliday*, 116 F. 2d 812 (C. C. A. 4th).

[4] Compare *Slocum* v. *New York Life Insurance Co.*, 228 U. S. 364, with *Baltimore & Carolina Line* v. *Redman*, 295 U. S. 654.

without granting a new trial.[5] But that rule has not taken away from juries and given to judges any part of the exclusive power of juries to weigh evidence and determine contested issues of fact[6]—a jury being the constitutional tribunal provided for trying facts in courts of law. Here, although there was evidence from which a jury could have reached a contrary conclusion, there was testimony from which a jury could have found these to be the facts: Petitioner suffered injuries on June 16, 1918, while serving in the front lines in France. On that date, in the early morning hours, bits of shrapnel wounded him in the right arm, right shoulder, right hip and in front of the right ear. He was helped to a dugout by another soldier. There he found others who were wounded. About fifteen minutes after he arrived at the dugout, another shell struck, immediately in front of the dugout door. All the nine or ten men present were either killed outright or were so badly wounded that they were unable to leave. Petitioner's left leg was practically cut off below the knee. He twisted a part of his wrapped leggings around his wound to stop the bleeding. About six and one-half hours later he was taken on a stretcher and carried back to the First Aid Station. There his wounds were temporarily dressed. After another six or seven hours, he was carried to the hospital. Shortly thereafter an operation followed and his left leg was removed. He underwent several operations in the

---

[5] The relevant portion of the rule provides: "If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed."

[6] See *Gunning* v. *Cooley*, 281 U. S. 90, 94; *Richmond & Danville R. Co.* v. *Powers*, 149 U. S. 43, 45; *Texas & Pacific Ry. Co.* v. *Cox*, 145 U. S. 593, 606; *Railroad Co.* v. *Stout*, 17 Wall. 657, 663.

hospitals in France, leaving that country for the United States in August of 1918 and arriving in Boston on September 7. He was treated in hospitals in the United States until about Christmas, 1918. During the years between the time of the injury and the time of the trial, petitioner suffered repeatedly from abscesses and blisters on the stump of his left leg, and his right leg has caused him inconvenience, suffering and disability. In addition his nervous system has shown serious and continuous impairment, so much so that the Circuit Court of Appeals properly said, "Certain it is that he was neurasthenic, and had uncontrollable accesses of terror at any explosion, or even during thunderstorms." There has never been a time since his injuries when he could do work which required him to stand upon or use the stump without having it blistered, chafed or abscessed within two days. Several physicians who examined and treated him through the years were of opinion that he would never be able to work continuously at a gainful occupation because of his condition, and that he had never been able so to work since the wound was received. The government gave him vocational training both in photography and in automobile repair work. He tried both, but from his own evidence, corroborated by that of his employers in many instances, the jury could have found that in spite of his determination to succeed, he was physically unable to do so. He bought a farm. He was compelled to depend on the work of his own family and relatives in this undertaking, but the venture was a failure and he lost the farm. He tried to operate a garage in partnership with another. In this, too, he was unsuccessful, and the jury could have found that his failure was attributable to his physical disabilities. For a time he was engaged as a salesman of aluminum cooking utensils. But here again the jury could have found that his contribution to the venture was small. For, as else-

where, there was testimony tending to show that it was a member of his family, in this instance his wife, whose labors made it possible for this activity to be carried on. Taking the evidence as a whole, the jurors, who heard the witnesses and personally examined the petitioner's wounds, could fairly have reached the conclusion that since his injuries petitioner never had been able, and would not be able thereafter, to work with any reasonable degree of regularity at any substantially gainful employment. The trial judge, who had the same opportunity as the jury to hear the witnesses, denied the government's motion for a directed verdict and correctly instructed the jury what they must find from the evidence in order to return a verdict for petitioner.[7]

It was not necessary that petitioner be bedridden, wholly helpless, or that he should abandon every possible effort to work in order for the jury to find that he was totally and permanently disabled.[8] It cannot be doubted that if petitioner had refrained from trying to

---

[7] The government expressed satisfaction with the trial judge's charge, which, as to total and permanent disability, contained this statement: "A total disability is any physical or nervous injury which makes it impossible for a person to follow continuously a substantially gainful occupation at any kind of work for which he was competent or qualified, physically and mentally, or for which he could qualify himself by a reasonable amount of study and training. The word 'total' as applied to 'disability' does not necessarily mean incapacitated to do any work at all. The word 'continuously' means with reasonable regularity. It does not preclude periods of disability which are ordinarily incident to activities of persons in generally sound health, for nearly all persons are at times temporarily incapacitated by injuries, or poor health, from carrying on their occupations. If Berry was able to follow a gainful occupation only spasmodically, with frequent interruptions, due to his injuries, and his shock, he was totally disabled. A disability is permanent when it is of such a nature that it is reasonably certain it will continue throughout a person's lifetime."

[8] *Lumbra* v. *United States*, 290 U. S. 551, 559–560.

do any work at all, and the same evidence of physical impairment which appears in this record had been offered, a jury could have properly found him totally and permanently disabled. And the jury could have found that his efforts to work—all of which sooner or later resulted in failure—were made not because of his ability to work but because of his unwillingness to live a life of idleness, even though totally and permanently disabled within the meaning of his policies.[9] Nor does the fact that he waited thirteen years before bringing suit stand as an insuperable barrier to his recovery. His case was not barred by any statute of limitations. Whatever weight the jury should have given to the circumstance of petitioner's delay in filing his claim, that weight was still for their consideration in connection with all the other evidence in the case.

There was evidence from which a jury could reach the conclusion that petitioner was totally and permanently disabled. That was enough. The judgment of the Circuit Court of Appeals is reversed, and that of the District Court is affirmed.

*Reversed.*

---

[9] See *United States* v. *Rice,* 72 F. 2d 676, 677; *Nicolay* v. *United States,* 51 F. 2d 170, 173; *United States* v. *Lawson,* 50 F. 2d 646, 651; *United States* v. *Godfrey,* 47 F. 2d 126, 127; *United States* v. *Phillips,* 44 F. 2d 689, 691.