## HOISINGTON v. UNITED STATES.
### No. 204.

Circuit Court of Appeals, Second Circuit.
April 24, 1942.

Joseph A. McNamara, U. S. Atty., of Burlington, Vt., and Timothy A. Curtin, Atty., Department of Justice, of Boston, Mass., and Julius C. Martin, Director, Bureau of War Risk Litigation, and Wilbur C. Pickett and Thomas E. Walsh, Attys., Department of Justice, all of Washington, D. C., for appellant.

Warren R. Austin, Jr., of Burlington, Vt., for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from a judgment for the plaintiff entered upon the verdict of a jury in an action upon a policy of war risk insurance. Motions by the United States for a directed verdict, for judgment notwithstanding the verdict, and for a new trial were overruled. The sole question presented by the appeal is whether the evidence is sufficient to support the jury's verdict that the insured was totally and permanently disabled before the lapse of his policy on May 31, 1919.

While serving in the Army overseas on July 31, 1918, the plaintiff sustained a concussion from a high explosive shell and was gassed. After several weeks of hospitalization he went back to his company, but in October was again sent to a base hospital where he remained until his return to this country in March, 1919. Shortly thereafter, on April 12th, he was honorably discharged. For the next six months he

felt unable to do any work but thereafter during several years he worked intermittently at various jobs, none of which was of long duration. From May, 1922, to December, 1924, he was given vocational training as a garage mechanic and automobile salesman. There was testimony that his training course was not a success. His most substantial work record consisted of two terms of employment by the Burt Lumber Co., the first extending from January 10, 1925, to May 15, 1926, the second from October 16, 1926, to August 6, 1927. For the next five years he tried farming, owning successively two 100 acre farms. Neither venture was a success, the plaintiff's testimony being that much of the farm work had to be done by hired hands as he was not himself able to do very much. Since 1932 he has had no occupation. The present action was commenced in August, 1932. In June of the following year a guardian of the plaintiff's person and property was appointed by the State court. This guardian intervened as plaintiff and was subsequently succeeded by the plaintiff's wife, as his legal guardian. The case did not come on for trial until February 1941.

██ The theory of the plaintiff's suit is that the concussion sustained in July, 1918, produced a psycho-neurotic condition which has grown progressively worse despite his efforts to resume a normal life in the community, and that the evidence justified the jury in finding, as it did, that he was totally and permanently disabled before his policy lapsed. The government, on the other hand, contends that the record shows conclusively that he was only partially disabled for many years after the critical date; and that its motion for a directed verdict should have been granted. The critical date is May 31, 1919, when the policy lapsed. To recover the plaintiff must establish his "total and permanent disability" before that date, but evidence as to his conduct and condition during the ensuing years is competent and relevant; and particularly is this true where the disability of the insured is produced by a mental ailment which may develop gradually and be difficult of diagnosis. Halliday v. United States, Jan. 19, 1942, 315 U.S. 94, 62 S.Ct. 438, 86 L.Ed. —.

██ Whether the plaintiff was totally and permanently disabled before the lapse of his policy is essentially a question of fact to be determined by the jury, and a proper regard for the fundamental right of trial by jury requires an appellate court to support the jury's verdict unless it is entirely clear that the evidence fails to sustain it. In the case at bar there was not only testimony of laymen, including the plaintiff himself, but also medical evidence from which the jury could find that from the date of his discharge from the Army he was suffering from a nervous, neurasthenic condition. Dr. Holcomb treated him sometime in 1919 for neuritis; Dr. Bates who saw him in June, 1920, when he complained of "confusion of mind under exercise or during excitement," expressed the opinion that the cause of his condition was "shell-shock"; Dr. Barrows testified to treating him for "hysterical seizure" in 1921 and 1923; and Dr. Upton of the Veterans' Bureau, who examined him August 30, 1921, made a diagnosis of "psycho-neurosis" and a prognosis "doubtful." His disability has been progressive and continuous. That it satisfies the definition of "permanent" is not seriously questioned, and could not be. See Lumbra v. United States, 290 U.S. 551, 560, 54 S.Ct. 272, 78 L.Ed. 492. Whether his disability satisfies the definition of "total" is not so clear. That occasional work for short periods by one generally disabled by impairment of mind or body does not as a matter of law negative total permanent disability may not be doubted. Berry v. United States, 312 U.S. 450, 61 S.Ct. 637, 85 L.Ed. 945; Lumbra v. United States, 290 U.S. 551, 561, 54 S.Ct. 272, 78 L.Ed. 492. But in the case at bar it appears that the plaintiff worked from January 10, 1925, to May 15, 1936, a total of 36 two-week periods. In 25 of these he worked full time (12 days), in 4 he lost but one day, and in the remaining 7 he lost a total of less than one-third of full time. After a five month lay-off in the summer of 1936, the reason for which does not appear, he was reemployed at increased wages and worked consecutively for 22 two-week periods, in more than half of which he worked full time and in none of which did he lose more than two days. Such extended periods of continuous labor after the critical date tend to support the appellant's contention that as a matter of law the insured was not totally disabled before May 31, 1919. Some years ago this court would quite likely have so ruled. In United States v. McDevitt, 2 Cir., 90 F.2d 592, at page 595,

478

we said that "A man who can hold jobs for ten and sixteen months at a stretch, is not 'totally disabled,' even though he must give up for a season and seek work anew." But recent decisions of the Supreme Court indicate very clearly that the issue of total permanent disability should be left for decision by the jury under proper instructions, rather than determined by the judges. Berry v. United States, 312 U.S. 450, 61 S.Ct. 637, 85 L.Ed. 945; Halliday v. United States, Jan. 19, 1942, 315 U.S. 94, 62 S.Ct. 438, 86 L.Ed. ——; see also Jacobs v. City of New York, March 30, 1942, 314 U.S. ——, 62 S.Ct. 854, 86 L.Ed. ——. In the Berry case a decision adverse to the veteran was reversed because the evidence as a whole would justify the jury in finding that since his injuries he never had been, and would not thereafter be, able "to work with any reasonable degree of regularity at any substantially gainful employment." The Halliday case, where the disability resulted from impairment of mind, as in the case at bar, is to similar effect. In the light of these recent authoritative opinions we find no error in submitting the case at bar to the jury and allowing its verdict to stand. The accuracy of the court's charge is not questioned.

Accordingly the judgment must be, and is, affirmed.