### WATTS v. RAILROAD RETIREMENT BOARD.

### No. 11283.

Circuit Court of Appeals, Fifth Circuit.

June 6, 1945.

114

Harold Cox, of Jackson, Miss., for appellant.

Myles F. Gibbons, Gen. Counsel, Railroad Retirement Board, and Louis Turner, both of Chicago, Ill. (David B. Schreiber, Asst. Gen. Counsel, and Alfred H. Meyers, both of Chicago, Ill., of counsel), for appellee.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was under Section 11 of the Railroad Retirement Act of 1937,[1] to set aside as clearly and manifestly wrong, that is without evidence to support it, and based upon an erroneous theory of law, the finding and decision of the Railroad Retirement Board, that appellant had not shown his condition "to be such as to constitute total and permanent disability for regular employment for hire within the meaning of the Railroad Retirement Act of 1937, and the Board's regulations".

The claim was that, on the record before the Board, the plaintiff had, as matter of law, established that he was, within Section 2(a) 3 of the Railroad Retirement Act of 1937,[2] a person who was "totally and permanently disabled for regular employment for hire and shall have completed thirty years of service."

The defense was that, while the evidence did show that plaintiff, after thirty years of creditable service, had attained the age of sixty and was, therefore, entitled to a reduced annuity under Section 2(a) 2(a) of the Railroad Retirement Act of 1937,[3] as the Board had found, the finding that he was not entitled to a full annuity could not, on the record, be said to be arbitrary, without support in the evidence, or contrary to law.

Both plaintiff and defendant moved for summary judgment on the record. Plaintiff took the ground that the record before the Board did not support the judgment against, but required a judgment for, plaintiff. Defendant, standing on the firm ground that the Board's decision and findings on a question of fact may not be set aside unless the proceedings are arbitrary or capricious, the findings without support in the evidence, or the decision is based on a clearly erroneous interpretation of law,[4] insisted that that was not the case here.

The district judge filed a careful opinion summarizing the proceedings and the evidence presented to the Board.[5] In it he

---

[1] 45 U.S.C.A. § 228k.

[2] 45 U.S.C.A. § 228b(a) (3).

[3] 45 U.S.C.A. § 228b (a) (2) (a).

[4] South v. Railroad Retirement Board, 5 Cir., 131 F.2d 748; Ellers v. Railroad Retirement Board, 2 Cir., 132 F.2d 636; Gardner v. Railroad Retirement Board, 5 Cir., 148 F.2d 935.

[5] In brief this consisted of the testimony of plaintiff that his height was 6 ft. 5½ inches, his weight 357½ pounds, that it hurt him to work, and that his knee would lock on him and he could not bend it. In answer to question by Mr. Hursey: "If your legs were all right, you think you could get along all right?", plaintiff answered: "Well, I believe I could make it a while longer if my legs were all right, but the trouble is they won't stand me".

He also testified that if he stands up over four or five minutes his knee catches and there is a severe burning in the joint, that his knees swell a little but the biggest swelling comes in his ankles, requiring him to untie his shoes and sit down and rest.

His engineer wrote that he was a good worker, but that he had noticed during the last trip at times he would become suddenly crippled about the knee and could hardly walk, much less board a car, as it was necessary that he kind of drag his leg.

There were five medical reports in the record. One of these reports consisted of an opinion of a doctor, without the support of a detailed analysis, that plaintiff was totally and permanently disabled for regular employment for hire. The other reports, while showing that plaintiff had some pain and some disability, stated conditions, which, neither as matter of law, nor in the opinion of the Board, amounted to total and permanent disability. One of the examinations showed that he was well developed muscularly, that his gait was normal, that with respect to the complaint of weakness and stiffness in the left knee, the

pointed out: that the plaintiff had had three hearings afforded him, the first before the Disability Rating Board, the next before the Appeals Council, and finally before the whole board, each hearing tribunal finding against his claim; that the Board was most indulgent in affording plaintiff every facility and opportunity to establish whatever rights he had; and that the proceedings throughout were characterized by a complete absence of arbitrariness or capriciousness.

As to the evidence he was of the opinion that it wholly failed to establish plaintiff's total and permanent disability as a matter of law, that at best it made an issue of fact which the Board alone was entitled to resolve.

Appellant is here urging that plaintiff's testimony established his total and permanent disability and that the medical examinations were not sufficient to overthrow it, and insisting that the Board's finding may not stand. In support, he cites many war risk cases, a few holding under the particular evidence that, as matter of law, plaintiff was, a few holding that he was not, totally and permanently disabled. As a whole, however, the cited cases establish that the issue of total permanent disability is normally for the jury, and that it is only where the evidence is all one way, and therefore demands an instruction, that a finding on this issue by the triers of fact may be disturbed. Hoisington v. United States, 2 Cir., 127 F.2d 476, 478, one of the cases cited by appellant, puts the matter very well. There the verdict and judgment having gone for plaintiff, the United States, claiming that the evidence demanded a verdict in its favor, appealed. Pointing out that there was a great deal of evidence to support the claim of the United States that plaintiff was not totally and permanently disabled, the court, nevertheless, affirmed the judgment, saying, "But recent decisions of the Supreme Court indicate very clearly that the issue of total

permanent disability should be left for decision by the jury under proper instructions, rather than determined by the judges.[6] * * * In the light of these recent authoritative opinions, we find no error in submitting the case at bar to the jury and allowing its verdict to stand."

A careful study of the record here leaves us in no doubt that this is peculiarly a fact case, and that it was peculiarly for the Board to say whether the inference to be drawn from the testimony as a whole was that plaintiff was, or that he was not, totally and permanently disabled. The district court was, therefore, right in declining to set aside or otherwise interfere with the Board's findings and decision. The judgment is affirmed.

WALLER, Circuit Judge (dissenting).

I am of the opinion that the appellant made out a prima facie case of total and permanent disability, and in the absence of any evidence in controversion the Board should have found for appellant.

I am influenced by the following features of the case. Appellant was sixty-two years of age, weighed at one time 376 pounds, and at the time of the application weighed 357 pounds. He had arthritis, particularly of the knee. If he stood for as much as ten minutes his ankle would swell and he would have to unlace his shoe. He drank four to five gallons of water a day. He required a chauffeur to drive his car. When he went on a diet to reduce, he gained 136 pounds. One of his knees locked and had a burning in it. He was no longer permitted by the railroad to work for it because of his incapacity. For forty years he had been hopping trains as a flagman or brakeman, and that was the only line of work he knew. The law does not hold that if he could sell pencils or make baskets he would then not be able to come within the category of the totally and permanently disabled.

examination showed moderate crepitation in each knee joint and complaint of increased pain on flexion and extension of knee. Flexion of the left knee is slightly restricted. It is about 90 percent of normal. There is no atrophy or swelling. Plaintiff is not bedridden and is able to travel.

Dr. Redmond, the last physician who examined him, in 1942, stated that he was of fair general appearance, seemingly well nourished, and having unusually good muscular development, that there were no orthopedic conditions, and his

report, though containing a diagnosis of arthritis, neuritis and some muscular rheumatism, did not contain any underlying findings upon which the diagnosis was based. According to all of the opinions, he was considerably obese, or overweight, for his height.

[6] Berry v. United States, 312 U.S. 450, 61 S.Ct. 637, 85 L.Ed. 945; Halliday v. United States, 315 U.S. 94, 62 S.Ct. 438, 86 L.Ed. 711. See also Jacob v. City of New York, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166.