**Frank C. McLAUGHLIN, Plaintiff,**

v.

**Anthony CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 1798.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Feb. 4, 1965.

James N. Hardin, Greeneville, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for defendant.

NEESE, District Judge.

The plaintiff McLaughlin is 42 years of age, has a seventh grade education, and worked as a common laborer for one employer for eleven years.   He applied a second time for disability insurance benefits under provisions of the Social Security Act on April 22, 1963, claiming he had been unable to engage in any substantial gainful activity since Decem-

ber 9, 1960. His second application was denied administratively at successive stages, so that an adverse decision of one of the defendant Secretary's hearing examiners became the former's final decision. The plaintiff then filed this action under 42 U.S.C. § 405(g) to review such final decision and has moved for a summary judgment. The defendant's response thereto is now deemed to have been waived. Local Rule 12(b).

It is undisputed that the plaintiff is qualified for the benefits he seeks under the special earnings provisions of the Act for the period pertinent to his application. Thus, the only issue presented here is whether the physical and mental impairments of Mr. McLaughlin prevent his engaging in any substantial gainful activity as those terms are contemplated in the aforesaid Act.

During the fourth year of the plaintiff's aforesaid extended period of employment, he was struck by a street car in Detroit, Michigan and sustained injuries to his chest and head, including a stellate line fracture of his right temporal bone in its squamous position and a brain concussion and contusions. These injuries resulted in the plaintiff's hospitalization for a period of sixty days, three and one-half weeks of which time he was in a deep coma. The plaintiff continues to suffer residual effects of these injuries, including a partial paralysis of his left arm and left leg, vertigo, impairment of his vision and slowed and slurred speech.

Despite these residual effects of his injuries, the plaintiff returned to his regular employment and continued to work for seven additional years. He was separated therefrom because of lack of work in February, 1960. When he sought to return to his former position, he was rejected for reemployment because of his impairments. Later in 1960 he obtained other employment, but he was again laid off that December. He was separated from further employment as a carpenter's helper after only one day because of his inability to perform the required lifting of building materials and supplies. For nearly a year, in 1963–64, the plaintiff was domiciled in the war veterans facility at Mountain Home, Tennessee. His application for a former serviceman's disability pension has been approved.

On consideration of this record as a whole, the Court is of the opinion, for the reasons hereinafter stated, that the administrative findings of the defendant Secretary are not supported by substantial evidence and cannot be permitted to stand. Universal Camera Corp. v. National Labor Relations Board (1951), 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; National Labor Relations Board v. Walton Mfg. Co. (1962), 369 U.S. 404, 405, 82 S.Ct. 853, 7 L.Ed.2d 829.

The defendant's disability determination, dated August 1, 1962, reflected that any quick change in the position of the plaintiff's head produced vertigo with a tendency for him to fall or become nauseated. On October 8, 1961, Dr. R. M. Glasgow, a general physician, found that the plaintiff could not work because of his vertigo condition. Dr. James H. Mooney, a neurological surgeon, found the residual of hyperflexion in the plaintiff's upper and lower extremities[1] remaining from a severe contusion of the right cerebrum of eight years earlier. On April 5, 1962, a psychiatrist, Dr. R. H. Turcotte, evaluated the plaintiff's degree of psychiatric impairment as "moderate to marked".

The aforesaid final decision recognized that the foregoing evidence proved that the plaintiff " * * * may have certain physical impairments, * * * " but these were concluded to be insufficient " * * * to establish an impairment or combination of impairments * * * sufficiently severe to preclude [the plaintiff] from engaging in any substantial gainful activity. * * * " The only evidence from which any such con-

---

1. Hyperflexion is the forcible overflexion of a limb. Dorland's Illustrated Medical Dictionary, 23rd Ed.

**804**

clusion might reasonably be inferred is the report of March 22, 1962 of Dr. Burgin E. Dossett, Jr., an internist, who found no "objective changes" to support the plaintiff's claim of disability; however, Dr. Dossett, evidently unaware of the appraisal of the plaintiff by Dr. Mooney on December 4, 1961, urged a neurological appraisal of the plaintiff, which the physician considered would provide "a better opinion of any neurological problem".

 It was not necessary that Mr. McLaughlin be bedridden or wholly helpless in order to establish his claim for benefits. Berry v. United States (1941), 312 U.S. 450, 455, 61 S.Ct. 637, 85 L.Ed. 945; cf. Everhart v. State Life Ins. Co., C.C.A. 8th (1946), 154 F.2d 347. Since the statute required that the disability of the plaintiff result from a "medically determinable physical or mental impairment", 42 U.S.C. § 416(i) (1) and § 423(c) (2), the plaintiff had no way of establishing his claim if his credible medical evidence was disregarded by the administrator. " * * * While the Secretary may have expertise in respect of some matters, we do not believe he supplants the medical expert." Hall v. Celebrezze, C.A.6th (1963), 314 F.2d 686, 690.

In an apparent attempt to comply with the requirements laid down in Kerner v. Flemming, C.A.2d (1960), 283 F.2d 916, 921–922 [2, 3], cited and quoted from in Wright v. Celebrezze, D.C. Tenn., No. 1659, E.D. NE D. [decided February 17, 1964], the administrative decision includes findings that the plaintiff can do " * * * various types of assembly work, inspection work or a gateman or guard or parking lot attendant. It is well recognized that such jobs do exist in the Johnson City, Kingsport area. * * * " There is no substantial evidence in this record to support that administrative conclusion. Indeed, where medical evidence has been adduced to the effect that Mr. McLaughlin is subject to falling and nausea, the Court would be surprised that anyone could suggest that Mr. McLaughlin is employable or able to work in a security capacity, driving automobiles of others, or in mass production. Certainly, there is nothing in this record from which it could have been properly determined administratively that Mr. McLaughlin is able to perform the types of work it was concluded he is able to perform.

The final decision of the Secretary will be reversed by an appropriate order.