**Crowsen L. ICENHOUR, Plaintiff,**

v.

**Caspar W. WEINBERGER, etc.,**
**Defendant.**

**Civ. A. No. 1145.**

United States District Court,
E. D. Tennessee,
Winchester Division.

Nov. 1, 1973.

James R. Nance, Shelbyville, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., and Ray H. Ledford, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is a judicial review of the decision of the defendant administrator, 42 U.S.C. § 405(g), denying the plaintiff's claim for a period of disability and disability benefits under the Social Security Act. 42 U.S.C. §§ 416(i), 423. Both parties moved for summary judgment. Rules 56(a), (b), Federal Rules of Civil Procedure.

The plaintiff filed an application for benefits under such Act on January 1, 1971, alleging that he first became unable to engage in substantial work on September 10, 1969, due to a heart attack, open heart surgery, and vein surgery (graft of a vein to the heart). The claim was denied initially and on reconsideration. A hearing examiner denied the application on July 13, 1972, and this became the final decision of the defendant administrator when an appeals council denied the plaintiff's request for a review.

The hearing examiner found, *inter alia:*

\* \* \* \* \* \*

3. The medical evidence establishes that [the plaintiff] has a significant physical impairment described as coronary heart disease with a vein bypass graft for the right coronary artery. This impairment became significant commencing September 10, 1969.

4. [The plaintiff] has continued to perform significant work and management activities relating to a store business which demonstrates the ability to perform significant gainful activity.

5. The evidence fails to establish that [the plaintiff's] physical impairment prevented him from engaging in substantial gainful activity for any continuous period which has lasted 12 months at any time up to the date of this decision.

6. The [plaintiff] is [sic: was] not under a 'disability' as defined in the Social Security Act, at any time on or before the date of this decision.

■■■ The only issue for determination by this Court is whether the Secretary's findings are supported by substantial evidence. Ingram v. Richardson, C.A.6th (1972), 471 F.2d 1268, 1271 [4]. The plaintiff had the burden of proving his disability within the meaning of the Act. 42 U.S.C. §§ 416(i), 423; Osborne v. United States, C.A.6th (1969), 409 F.2d 37, 39 [2]. " \* \* \* We have defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. Labor Board, [(1938)] 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126. '[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' Labor Board

v. Columbian Enameling & Stamping Co., [(1939)] 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660, 665. \* \* \*" Consolo v. Federal Maritime Com., (1966), 383 U.S. 607, 619–620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131, 140–141 (headnote 9). Applying these criteria, there is no substantial evidence in this record to support the latter three of the aforementioned findings of the examiner.

There is no dispute about the gravity of plaintiff's medical problems. The examiner found " \* \* \* [the plaintiff] suffered heart attacks followed by open heart surgery (April 1970) involving a vein bypass graft for right coronary artery which had developed a complete blockage. \* \* \* The evidence establishes that [the plaintiff's] heart impairments from and after September 1969 would normally be sufficient to prevent one from engaging in significant gainful activity. \* \* \*" The examiner also found that the plaintiff was hospitalized 12 times between May 22, 1969 and April 26, 1971 for a total of 129 days, although the plaintiff contended subsequent to the hearing that he was hospitalized 16 times between May, 1969 and November, 1971 for a total of 176 days. Dr. Joseph H. Feldhaus reported on June 2, 1971 that " \* \* \* [t]he patient continues to have angina at the present time. The patient has been seen within the last two weeks. Since there is no question about this man's proven coronary artery disease, there would seem to be no questions as he should be approved [for Social Security disability benefits]. \* \* \*" Dr. Jacob Alperin, a specialist in cardiovascular diseases, reported at length on February 22, 1972 the reasons Mr. Icenhour could not return to substantial gainful employment. This report provides a good summary of the plaintiff's pertinent medical history and situation:

\* \* \* \* \* \*

On September 10, 1969 his family informed me that Mr. Icenhour had had a heart attack and was in the hospital in Shelbyville.

I next saw Mr. Icenhour on October 30, 1969 for persistant [sic] chest pains. The electrocardiogram at that time showed evidence of a recent posterior or inferior lateral myocardial infarction. * * * My opinion * * * was that he had coronary artery disease and coronary insufficiency [angina pectoris]. * * * From December 9, 1969 to December 23, 1969 he was in the Millington Naval Hospital for chest pains diagnosed as 'acute coronary insufficiency.' * * *

Mr. Icenhour continued to have numerous episodes of chest pain. On February 2, 1970 he came to my office where another electrocardiogram revealed some new changes. * * *

In April 1970 he was admitted to the Baptist Hospital because of this persistant [sic] pain. After electrocardiograms and vectocardiographic studies were done, a coronary arteriogram was performed on April 20 by Dr. Garrett. This revealed an occlusion of the right coronary artery. * * *

Subsequent to this study, Dr. Garrett performed a venous bypass operation on the right coronary artery. * * *

For a while after the operation, Mr. Icenhour was partially relieved but he has never been completely free of chest pains.

Because of the persistance [sic] of these pains, he went to Bethesda, Maryland hospital where in November 1970 another coronary arteriogram was done. The bypass was functioning but it also showed:

1. Coronary atherosclerosis with complete obstruction of the proximal right coronary artery and diffuse distal right coronary disease.

2. Normal left coronary, left anterior descending and left circumflex system with multiple collaterals to the distal right coronary artery.

3. Left ventricular akinesis of the inferior basilar constrictor muscle. * * *

On April 26, 1971, I admitted Mr. Icenhour to Baptist Hospital because of 'squeezing pains' in his chest. * * *

It is my opinion that Mr. Icenhour still has angina pectoris or coronary insufficiency and that he is totally unable to carry out his usual duties and occupation for the following reasons:

1. He has coronary atherosclerosis. * * * Pathological studies in patients with angina who die almost invariably reveal extensive atherosclerosis. * * *

2. The operation did not in any way change the condition of his arteries. It only bypassed the obstruction.

*   *   *   *   *   *

4. About twenty percent of the venous bypass operations close up again. * * *

I call your attention to the statement [referring to an editorial of the American Medical Association of January 24, 1972] that twenty-two [sic] percent of the vein grafts are occluded after one year and that cardiac function is worse in fifty percent of those with previous myocardial damage. Mr. Icenhour has had a myocardial infarction already! Then the diagnosis from Bethesda, Maryland hospital number 4 states 'left ventricular akinesis of the inferior basilar constrictor muscle.' This shows that part of his cardiac muscle has lost it's [sic] ability to contract effectively. Akinesis means absence, loss or weakness of muscle function.

*   *   *   *   *   *

* * * It is my observation after forty years of practice in cardiology that these bypass operations do not cure the underlying disease. Coronary artery disease is an atherosclerosis of all the coronary arteries with varying dgree of involvement in different parts of the arterial system. Bypassing the obstruction merely pro-

vides more oxygen to that part of the heart supplied by that artery but the artery *distal* to the obstruction is also involved and can respond to exertion and/or emotion or other factors * * * which cause chest pain and coronary insufficiency.

Mr. Icenhour still has these symptoms and with the evidence above, it is my opinion he cannot and should not carry out his usual occupation or be gainfully employed.

* * * * * *

There is no medical evidence whatsoever in this record which tends to substantiate any conclusion other than that Mr. Icenhour is physically incapable of performing any substantial gainful employment.

It is undisputed that the plaintiff and his wife, as partners, own a franchise dry goods store; that prior to the onset of his heart malady, Mr. Icenhour managed the dry goods store, *i. e.,* checked the mail, wrote orders, checked in freight, stocked shelves, relieved clerks, trained new employees, dusted shelves, cleaned floors, etc.; that this required lifting and carrying up to 150 lbs., pushing and pulling up to 500 lbs., and climbing, stooping, bending, etc.; and that, since his heart attack of September 10, 1969, the plaintiff's contribution to the business has been dubious and irregular. The hearing examiner found that the plaintiff " * * * was able to do no work whatsoever between September 1969 to December 1970 and did not go to the store at all * * *. Beginning January 1971 [plaintiff] went to the store on a parttime basis for three months until the recurrence of his heart trouble in April 1971. In May 1971 and continuing to the present time (July 13, 1972), despite his continued angina symptoms, he resumed parttime work devoting 15 to 20 hours per week to the business. * * * " Except for this parttime participation by the plaintiff, it is undisputed that the store has been managed by his wife since the beginning of his heart condition.

The sole basis for the examiner's decision was the time spent by the plaintiff in the store and the amount of earnings that can be attributed thereto. It is undisputed that the plaintiff went to his store on an average of four days per week; that he did not participate very much in the management or operation of the store; that he spent much of the time at the store resting; that he did very little paper work or supervising; that sometimes, after arriving at the store, he " * * * just about turns around and goes home * * *"; that his wife now takes care of the management of the store; and that he makes approximately 10% of the decisions. Mr. James R. Nance, the plaintiff's attorney, testified that he personally observed an instance in which Mr. Icenhour had an attack of some sort which required him to lie down in the back of the store and breathe heavily for several minutes.

Mr. Icenhour has a drawing account at the store based on a percentage of the gross sales. This aggregated $2,100 in the years 1969, 1970 and 1971. The plaintiff's 1970 federal income tax return lists the store business income as partnership income of $20,512.64, one-half of which was allocated to the plaintiff and the other half to his wife. The plaintiff also receives $260 per month as retirement pay from the United States Navy.

Pursuant to authority granted him by 42 U.S.C. § 423(d)(4), the Secretary promulgated certain regulations, of which 20 CFR § 404.1534(a) provides, *inter alia*: " * * * Earnings received by an employee which are not attributable to his work activity are not considered in determining his ability to engage in substantial gainful activity. * * * " In reliance upon subsections (b), (e) of this regulation, the hearing examiner concluded that the earnings attributable to the 15–20 hours per week spent by the plaintiff in the store were significant enough to indicate substantial gainful employment.

20 CFR § 404.1534(b) provides: "* * * An individual's earnings of $140 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity *unless there is affirmative evidence that such work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity* under the criteria in §§ 404.1532 and 404.-1533 and paragraph (a) of this section. * * *" (Emphasis supplied). It appears that the examiner placed undue reliance upon the first portion of this regulation to the exclusion of the latter portion. 20 CFR § 404.1534(e) provides, *inter alia*: "* * * The earnings or losses of a self-employed individual often reflect factors other than the individual's work activities in carrying on his trade or business. * * * Thus, less weight is given to * * * small income or losses in determining a self-employed individual's ability to engage in substantial gainful activity, and greater weight is given to such factors as the extent of his activities and the supervisory, managerial, or advisory services rendered by him. * * *" 20 CFR § 404.1532(f), which was not relied upon by the examiner, provides: "* * * Supervisory, managerial, advisory or other *significant* personal services rendered by a self-employed individual demonstrate an ability to engage in substantial gainful activity. * * *" (Emphasis supplied).

In response to questions by the examiner, the plaintiff repeatedly stated that, because of his lack of contribution to the business, he could not estimate the "worth" of his time at the store. Upon further questioning, however, Mr. Icenhour stated that his time was worth, perhaps, $1 an hour. After still further questioning by the examiner, he stated that he supposed his time was worth $2 an hour. The plaintiff, after further questioning along this line by the examiner, finally stated that he did not understand. Yet, the examiner concluded: "* * * Claimant's work activity is rated by him as worth about $2 an hour.

At 17½ hours per week, this is $35 per week or over $150 per month. * * *" While relying upon the foregoing, the examiner disregarded substantially the rest of the record. The plaintiff testified that he was at the store approximately 15–20 hours per week; that the sum of his activity was to check invoices, i. e., to see if the merchandise actually came in; that he did no selling other than to answer a question as to availability of merchandise; that he has nothing to do with any other managerial or supervisory duties; that he has nothing to do with the "books"; that his wife makes nearly all of the decisions (he stated that he might make 10% of the decisions); that an estimate of the value of his services would be approximately $25 per week; that he has "shooting" pains after even a small amount of exertion and feels that he must lie down; that he has constant chest pains; that at times, he must take pills and lie down in the back of the store; and that his condition is steadily growing worse. The examiner also concluded: "* * * Approached from another standpoint, his earnings as a partner have been at least some $10,000 per year. Although his wife has taken over the active management of the business, he still contributes 10% of the decisions and makes recommendations as to others. His manage-contribution must be valued at more than a $2 per hour rate especially when weighed in the light of his partnership earnings share of the $20,000 yearly net business earnings. * * *

█ There is affirmative evidence here that Mr. Icenhour's work activities establish that he does not have the ability to engage in substantial gainful activity. 20 CFR § 404.1534(b); cf. Wilson v. Richardson, C.A.4th (1972), 455 F.2d 304, 307 [2]. The examiner obviously considered earnings received by the plaintiff which were not attributable to his work activity and, as such, should not have been considered in determining his ability to engage in substantial gainful activity. 20 CFR § 404.1534(a).

There is no evidence of *significant* personal services rendered by Mr. Icenhour. 20 CFR § 404.1532(f). As stated, *supra*, the examiner found that, although the plaintiff went to the store on a part-time basis from January 1971 until April 1971, he was forced to stop because of a recurrence of his heart trouble. He then started to go to the store on a similar basis in May 1971. 20 CFR § 404.1534(a) provides, *inter alia*: "* * * Where an individual is forced to discontinue his work activities after a short time because his impairment precludes continuing such activities, his earnings would not demonstrate ability to engage in substantial gainful activity. * * *"

█ The record herein establishes that Mr. Icenhour cannot engage in substantial activity without gravely endangering his health. See Walker v. Gardner, D.C.Tenn. (1969), 296 F.Supp. 1286, 1290 [2], and Watts v. Finch, D.C.Tenn. (1970), 311 F.Supp. 660, 664 [2]. "* * * Since the statute required that the disability result from a 'medically determinable physical or mental impairment' (42 U.S.C. § 416(i)(1) and § 423(c)(2)), the claimant had no way of establishing his case if his credible medical evidence was disregarded. While the Secretary may have expertise in respect to some matters, we do not believe he supplants the medical expert. * * *" Hall v. Celebrezze, C.A.6th (1963), 314 F.2d 686, 689–690 [2]. It was not necessary for Mr. Icenhour to be bedridden or completely helpless to be entitled to benefits. Berry v. United States (1941), 312 U.S. 450, 455, 61 S. Ct. 637, 85 L.Ed. 945, 948–949 [2]. "* * * Where '* * * reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are * * * bound to decide against the Secretary. * * *' * * *" Dyer v. Richardson, D.C.Tenn. (1972), 347 F. Supp. 478, 481 [4].

The Court believes that no further evidence is necessary for a decision as to the plaintiff's disability. "* * *

The proof of appellant's disability was strong, and the evidence to the contrary was lacking in substance. 'After the long pendency of the application, we see no reason to remand the case for the taking of further testimony.' Cyrus v. Celebrezze, 341 F.2d 192, 197 (C.A.4). * * *" Sayers v. Gardner, C.A.6th (1967), 380 F.2d 940, 955 [11].

The motion of the defendant for a summary judgment hereby is Denied. Such motion of the plaintiff hereby is Granted. It is the decision of this Court that the final decision of the defendant administrator hereby is Reversed, and this action hereby is Remanded to the defendant Secretary with directions that the Social Security Administration award the plaintiff the period of disability and the disability health benefits which he claims. Rule 58(1), Federal Rules of Civil Procedure.