CALLAHAN, Circuit Judge,
concurring in part, and dissenting in part:
I am compelled to dissent from the majority’s affirmance of the district court’s judgment as a matter of law and summary judgment dismissing Reiber’s defamation-related claims.[1] I would reinstate the jury’s verdict in favor of the Plaintiffs and allow the defamation-related claims against Reiber to proceed to trial.
Vacating a jury verdict is no small matter. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); Harper v. City of Los Angeles, 533 F.3d 1010, 1021-22 (9th Cir.2008) (“The jury is the ‘constitutional tribunal provided for trying facts in courts of law.’ ”) (quoting Berry v. United States, 312 U.S. 450, 453, 61 S.Ct. 637, 85 L.Ed. 945 (1941)). We must ask whether the evidence, construed in the light most favorable to the nonmoving party, “permits only one conclusion and that conclusion is contrary to the jury’s verdict.” Martin v. Cal. Dep’t of Veterans Affairs, 560 F.3d 1042, 1046 (9th Cir.2009). Although the majority cites this rule, I disagree with its application of the standard.
The facts, viewed in the light most favorable to the Plaintiffs, as we are required to view them, are as follows: In 2009, Eric Reiber was a Captain with the Pullman City Fire Department. He, along •with others in the department, observed that a female trainee appeared to be have unprofessional interactions with a male firefighter. After Reiber gave the trainee a less than positive performance review, which included a recommendation to spend less time with the firefighter, she complained of a hostile work environment.
The complaint eventually made its way to the Chief of the Fire Department, Patrick Wilkins. Chief Wilkins and Reiber had a strained relationship over the years, due in part to Reiber’s position as President of the local firefighters’ union. Upon learning of the trainee’s complaint, Chief Wilkins solicited and received written statements from the trainee and other firefighters complaining about Reiber. The most lurid allegation was that Reiber had asked a firefighter’s wife for sexually explicit photos, although the accusing firefighter flip-flopped as to whether this actually occurred.
Chief Wilkins placed Reiber on paid administrative leave while the City’s Human Resources Director conducted an internal sexual harassment investigation. The vast majority of the questions asked during the investigation implied that Reiber was a suspect,- for example, asking whether the interviewee “felt uncomfortable” or “intimidated” around him; witnessed “inappropriate,” “disparaging,” or “derogatory” behavior by him; and had been “requested to provide Captain Eric Reiber with sexually explicit photos.” Although Reiber admitted to some of the unprofessional conduct uncovered by the investigation, he vehe *594 mently denied that he had sexually harassed anyone or that he had asked for sexually explicit photos.
Reiber’s coworkers, the co-Plaintiffs, learned about the sexual harassment investigation. They attempted to speak on Reiber’s behalf at his pre-disciplinary hearing, but Chief Wilkins would not permit them. The co-Plaintiffs then submitted letters on Reiber’s behalf, calling into question the propriety of the investigation and doubting the veracity and motivations of Reiber’s accuser and her supporters. However, Chief Wilkins concluded that Reiber had created a hostile work environment, including that Reiber had asked a firefighter’s wife for naked pictures. Chief Wilkins suspended Reiber for one month, and demoted him to the rank of firefighter for six months, reciting the punishment in a lengthy and vitriolic letter. Reiber grieved his discipline to the City Supervisor but was unsuccessful. One day prior to the grievance hearing, the City for the first time produced a copy of the written statement that formed the basis for the accusation that Reiber had requested sexually explicit photos. It claimed the omission was inadvertent.
After the co-Plaintiffs submitted their written statements in support of Reiber, a City attorney met with the accuser and her supporters. Soon thereafter, two supporters filed retaliation complaints against Plaintiffs, which prompted the City to conduct another investigation, this time hiring an outside firm. The investigator limited the scope of her investigation to the retaliation complaints and did not permit interviewees to expand on the previous sexual harassment allegations. The investigation led Chief Wilkins to discipline the co-Plaintiffs who had supported Reiber. Plaintiff Fisher was demoted and suspended without pay for 30 days. The other plaintiffs received either three- or six-day suspensions. Co-Plaintiffs appealed and grieved their discipline to the City Supervisor who ultimately reversed it. By comparison, one of the accuser’s supporters admitted to bringing pornography into work and making crude references in the workplace about sex. Chief Wilkins gave him only a written warning.
Reiber and co-Plaintiffs brought a lawsuit against the City, 'Chief Wilkins, the City’s Human Resources Manager, and the City Supervisor alleging, among other things, that Defendants retaliated against them for opposing a corrupt and contrived sexual harassment investigation. The retaliation claims proceeded to trial before eight jurors. Trial took six days during which the parties introduced testimony from over 20 witnesses including the six Plaintiffs; the trainee who accused Reiber of creating a hostile work environment; the two firefighters who alleged that Reiber requested sexually explicit photographs; the individuals who conducted the investigations; and the City Supervisor to whom the discipline was appealed. The parties also introduced more than 100 exhibits. After deliberations, the jury returned verdict overwhelmingly in favor of Plaintiffs, awarding $1 million: $325,800 to Reiber, and $135,000 apiece to each of the other five co-Plaintiffs.[2]
This should have been the end of the litigation. However, the Defendants moved to set aside the jury verdict, the district court granted the motion, and the majority affirms. This decision cannot be sustained under the appropriate standard of review. See Reeves, 530 U.S. at 151, *595 120 S.Ct. 2097 (“[the court] must disregard all evidence favorable to the moving party that the jury is not required to believe”). Drawing all reasonable inferences in- favor of the verdict, it is clear that the jury found the City and Chief Wilkins contrived a sexual harassment investigation into Reiber, and disciplined the Plaintiffs for opposing that investigation.
Contrary to the majority’s assertion, Reiber engaged in a protected activity by opposing what he reasonably believed to be 'a contrived, corrupt sexual harassment investigation. This was the theory of the case on which the jury was instructed. Reiber opposed his investigation from the beginning by submitting lengthy written rebuttals, speaking in his defense at the pre-diseiplinary hearing, and gathering the support of other firefighters who also opposed the investigation as specious. Based on this evidence, the jury could have concluded that Reiber engaged in a protected opposition activity. See Crawford v. Metro. Gov’t of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 273-74, 277-80, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009) (employee’s answers to questions regarding “inappropriate behavior” during internal investigation constituted protected opposition activity); Kahn v. Salerno, 90 Wash.App. 110, 951 P.2d 321, 332 (1998) (“To determine whether an employee was engaged in protected opposition activity, the court must balance the setting in which the activity arose and the interests and motives of the employer and employee.”) (internal quotation marks omitted).
The majority states that “[njothing in the trial transcript even suggests that Reiber had an objectively reasonable belief that his employer violated the law.” (internal quotation marks and brackets omitted). But an employee need not be aware that the practice in question is unlawful for her opposition to be protected. See Gifford v. Atchison, Topeka & Santa Fe Ry. Co., 685 F.2d 1149, 1157 (9th Cir.1982) (“It requires a certain sophistication for an employee to recognize that an offensive employment practice may represent sex or race discrimination that is against the law.”); see also Kahn, 951 P.2d at 332. Reiber testified that: “It seemed to be pretty obvious to me that there were — there were some reasons behind these charges that didn’t actually have anything to do with me or my performance.” Reiber’s co-Plaintiffs similarly called into question the propriety of .the investigation; one described the investigation as “a witch-hunt, the truth be-damned.” Given this evidence, I would hold that a reasonable employee could believe that a corrupt and contrived sexual harassment investigation violated the law. Indeed, the district court admitted that the co-Plaintiffs’ “perceived corruption during an internal investigation” could amount to a protected activity. The same logic applies to Reiber.
The majority errs further by finding “the evidence at trial was insufficient, as a matter of law, to establish that Reiber and his co-Plaintiffs were subject to unlawful retaliation under Title VII or the WLAD.” “[E]mployers rarely will reveal they are motivated by retaliation [and] plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose.” Hollenback v. Shriners Hospitals for Children, 149 Wash.App. 810, 206 P.3d 337, 344 (2009) (internal quotation marks omitted). True, the Defendants’ stated reason for disciplining Reiber was his inappropriate conduct, and their stated reason for disciplining the co-Plaintiffs was to respond to complaints by other employees. The jury, however, was not required to accept Defendants’ assertions for several reasons.
First, Chief Wilkins’s disciplinary notice contained ample evidence that Reiber’s opposition to the investigation was a “sub *596 stantial factor” in his discipline. The notice at some length describes Reiber’s cultivation of a loyal following and his failure as a leader. The jury could have found that Chief Wilkins’s anger with Reiber’s vehement challenge to the investigation motivated the decision to discipline him.
Second, there was additional evidence connecting Chief Wilkins’s retaliatory animus to his discipline of the co-Plaintiffs. For example, Chief Wilkins punished co-Plaintiffs after they sought to speak, and he refused to let them speak at Reiber’s pre-disciplinary hearing. In his discipline notice to Reiber, Chief Wilkins listed co-Plaintiffs by name, and cited them as examples of Reiber’s poor leadership style. Also, Chief Wilkins’s discipline of co-Plaintiffs was out of proportion to the discipline imposed against another firefighter who brought pornography to work and made inappropriate sexual comments but received only a written warning. Furthermore, the Chiefs discipline of the co-Plaintiffs was ultimately reversed by the City Supervisor. This was further evidence that the jury could consider in determining the Chief imposed discipline based on Plaintiffs’ opposition to the investigation, not for their alleged conduct.
Third, the jury was not required to credit the investigations conducted by the City. The first investigator was an employee of the City (and a co-Defendant) and the second investigator was hired by the City, and therefore, their potential biases against Plaintiffs are evident. Furthermore, both investigators admittedly limited the scope of their investigations to the narrow issues before them, and declined to examine related issues. The investigation of the co-Plaintiffs took place after the accuser and her supporters met with the City’s attorney; a jury could have determined that their complaints were also contrived.
In sum, there was sufficient evidence of causation to support the jury’s verdict, particularly with respect to Plaintiffs’ claims under the Washington Law Against Discrimination, which only requires that a protected activity be a “substantial factor” in the adverse employment action. See Allison v. Hous. Auth. of Seattle, 118 Wash.2d 79, 821 P.2d 34, 35, 42 (1991) (en banc).
Because I would reinstate the jury verdict finding for Plaintiffs’ retaliation claims, I would also hold that the district court erred in dismissing Plaintiffs’ civil conspiracy claim (cf. Adams v. King Cnty., 164 Wash.2d 640, 192 P.3d 891, 901 (2008) (en banc)), and in declining to consider Plaintiffs’ motion for attorneys’ fees.
In addition, I would vacate the grant of partial summary judgment of Reiber’s defamation, defamation by implication, and false light claims, and let those claims proceed to trial. The record suggests that a jury could conclude the City’s accusation that Reiber asked for sexually explicit photos was false, and the relevant employees in the City knew or acted with reckless disregard as to the statement’s falsity. See Hitter v. Bellevue Sch. Dist. No. 405, 66 Wash.App. 391, 832 P.2d 130, 135-36 (1992) (citing Bender v. City of Seattle, 99 Wash.2d 582, 664 P.2d 492 (1983) (en banc)).
A jury verdict may be set aside only where the evidence, viewed in a light most favorable to the prevailing party, allows for one reasonable conclusion and that conclusion is contrary to the jury’s verdict. Because the facts in this case do not support such a conclusion, I would reverse the district court’s grant of judgment as a matter of law and reinstate the jury’s verdict.

. I concur with the majority’s affirmance of the district court’s grant of summary judgment dismissing Reiber’s Fourteenth Amendment and outrage claims, and dismissing co-Plaintiffs’ First Amendment and defamation-related claims.

. The jury found Chief Wilkins liable but not City Human Resources Manager Karen Sires or City Supervisor John Sherman.