**Green B. KUYKENDALL, Plaintiff,**

**v.**

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, United States of America, Defendant.**

**No. 1783.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

Aug. 3, 1964.

Ralph W. Robinson, Van Buren, Ark., for plaintiff.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action to review a decision of the defendant Secretary denying the plaintiff's application for disability benefits under the Social Security Act, 42 U.S.C.A. § 401 et seq. Plaintiff filed his application March 20, 1962, which was subsequently denied, and the plaintiff seeks to set aside the defendant Secretary's decision, contending that it is not supported by substantial evidence. The case is now before the court on cross motions for summary judgment, together with briefs submitted by the parties in support of their respective contentions. The pleadings establish that the plaintiff last met the earnings requirements June 30, 1951.

The administrative transcript discloses that the plaintiff was last employed in the fall of 1948, although his application for benefits was not filed until March 20, 1962. Although there is a lapse of nearly 14 years between the time of his last employment and the date of filing his application for disability benefits, the defendant Secretary does not contend that the plaintiff is barred from pursuing his application either by statute or administrative regulations. The record further discloses that the plaintiff was not apprised of his possible disability benefits under the Social Security Act until the early part of 1962, and for that reason did not file earlier.

The certified administrative transcript indicates the following: The plaintiff was born March 24, 1904, and is a resident of Mulberry, Arkansas. He has lived in Mulberry and vicinity all of his adult life and is married but has no children. His occupation has been that of structural steel worker, chiefly employed by the American Bridge Company, a subsidiary of U. S. Steel Corporation. His work activities have consisted entirely of manual labor in the construction of large bridges in different parts of the country. Sometime in 1948 he began to suffer severe loss of his hearing and has not been regularly employed since because of the ailment.

The plaintiff was examined March 20, 1962, by Dr. O. J. Kirksey of Mulberry, Arkansas, and in a letter report of that date Dr. Kirksey stated that the plaintiff had subjective symptoms of deafness and headaches, and the doctor observed a perforation of the right eardrum. He further recommended that the plaintiff be examined by a specialist.

On May 11, 1962, Dr. Charles S. Lane, Jr., an otolaryngologist (ear and throat specialist), of Fort Smith, Arkansas, examined the plaintiff, and in his letter to the Arkansas State Department of OASI stated:

> "Examination of his ears revealed a large inferior central perforation of the right ear drum. No pus was seen in the right middle ear. Examination of the left ear revealed a very large perforation involving the anterior inferior, the posterior inferior and the posterior superior

quadrants. Visible in the left middle ear is what appears to be a cholesteatoma cyst with slight purulent material present.

\* \* \* \* \* \*

"We performed an audiogram, a copy of which I am enclosing. You will note from this audiogram that he has a severe mixed type deafness and because of this I doubt that there would be any chance of getting an appreciable improvement in his hearing with surgery. Because of the severe chronic nature of the disease he has in his middle ears, however, I do feel that surgery on his ears should be performed. Because of the visible cholesteatoma in his left ear, even though this is the best hearing ear, I feel it should be operated first. If possible, a tympanoplasty procedure could be done, which would offer him the best chance of preserving what hearing he now has in the ear."

Dr. Lane, in a second letter to the State OASI dated May 23, 1962, stated than an air conduction hearing aid might be of some help to the plaintiff's hearing in his left ear.

Plaintiff was also examined by Dr. S. Z. Faier of the Holt-Krock Clinic of Fort Smith, Arkansas, on July 30, 1962. Dr. Faier in a letter dated August 17, 1962, stated that plaintiff had a total loss of hearing in the right ear and marked impairment of hearing in the left ear, (plaintiff could hear loud voices in his left ear at 18 inches). With respect to the indefinite duration or permanence of the plaintiff's condition and what could be done to alleviate it, Dr. Faier stated:

"Any surgery that would be considered would be of the radical mastoidectomy type. Surgery would be indicated only because of the pathology present. I doubt very much if there would be any improvement in hearing in the left ear, which is the better ear. There would be no possibility of improvement in the hearing of the right ear. It is

my understanding that this patient has not been helped with a hearing aid."

On September 27, 1962, the plaintiff was given additional examination at the Holt-Krock Clinic by Dr. Claud S. Heffington, who observed the same total loss of hearing in the right ear and severe loss of hearing in the left ear. Dr. Heffington in his letter report of that date stated that in order for the plaintiff to understand attempted oral communication with him, Dr. Heffington removed his stethoscope and placed the ear piece in the plaintiff's ears and spoke into the bell, but even that was not very satisfactory.

After the initial denial of benefits, the plaintiff was given a hearing by the defendant's hearing examiner on August 8, 1963. The hearing examiner in his report to the plaintiff on October 15, 1963, was of the opinion that the plaintiff was not entitled to a period of disability or disability benefits in that the plaintiff "has not met the burden of establishing that he suffered from a medically determinable impairment of such severity, as early as June 30, 1951 (when he last met the earnings requirements), to preclude engagement in any substantial gainful activity."

With respect to the plaintiff's inability to hear at the time of his appearance before the hearing examiner, the letter report of October 15, 1963, discloses the following:

"At the hearing, following a brief discussion, it was apparent that claimant was not capable of testifying in that he was unable to hear the questions posed, even with the aid of his wife. Claimant's attorney and the hearing examiner recognized this and agreed that the testimony of claimant might be secured by interrogatories subsequent to the hearing."

Thus, there is no argument that the plaintiff has an almost total loss of hearing at the present which is recognized by the defendant Secretary and which

is conclusively established by the medical evidence. However, the defendant Secretary does contend that this physical impairment, which is of a permanent nature and a condition precedent to allowance of disability benefits under the Act, was not present on or before June 30, 1951, when he last met the earnings requirements.

■ The defendant Secretary's determination that this condition did not exist on or before June 30, 1951, the time the plaintiff last met the earnings requirements, must be affirmed if there is substantial evidence in the administrative record to support it. Celebrezze v. Bolas, (8 Cir. 1963) 316 F.2d 498; Lewis v. Flemming, (E.D.Ark.1959) 176 F. Supp. 872; Hawkins v. Celebrezze, (W. D.Ark.1962) 210 F.Supp. 341.

In support of the plaintiff's contention that this impairment existed at the time he last met the earnings requirements, and in addition to the objective medical evidence, the plaintiff's wife, Mrs. Lucille Kuykendall, inter alia, testified, beginning at page 57 of the transcript:

"Q. How does his hearing compare now with what it was in about 1946 and '48, along in there?

"A. Now it was just like it was in 1946 or '48 when he had the abscesses and when he had abscesses he absolutely couldn't hear a sound.

\* \* \* \* \* \*

"Q. Do you know whether or not he has tried hearings aids?

"A. Yes, he has tried hearing aids.

"Q. Do they seem to improve his hearing condition?

"A. No, the only thing they made Buddy nervous. Buddy can put a hearing aid on be so nervous he would jerk it off, lay it down and put it back on again, just interfere with his abscesses and his ears. Seemed like it got worse all the time when he would try to wear the hearing aid.

\* \* \* \* \* \*

"Q. Do you know anything that he has done since 1948 in the way of earning income?

"A. No. I know Buddy tried to get a job as a janitor at the school down there and they wouldn't have him because they said he just couldn't hear, they had to have somebody that could hear.

"Q. Do you know any other jobs he has tried to get?

"A. No, I think he has but they have all turned him down. He told us about trying to go to work there in the city. They wanted him to be a city policeman but said they couldn't use him for a city nightwatchman because it takes a man that has ears.

\* \* \* \* \* \*

"Q. Do you know of any work he has done since 1948?

"A. Not a thing in the world that he drew a penny for.

"Q. Do you know anything around there that he could do?

"A. No, I don't, I don't think there is anybody in Mulberry that would hire Buddy to do anything."

Mr. Ralph Kramer testified beginning at page 59 of the transcript:

"Q. Why wouldn't they hire him, Mr. Kramer?

"A. His health hasn't been good and they couldn't make him understand what they wanted him to do if their life depended on it. When you have got somebody that is working for you, that's working in the yard you want to tell them what you want them to do every time.

"Q. Back as early as 1951 you think he would have encountered that kind of resistance to employment?

"A. I don't know of any place at all, because Buddy couldn't, wouldn't work when he had that abscess in his ear, he absolutely couldn't work for anybody. I think he has been off so much that people, nobody would hire him. I think that is one reason that Buddy never did try to get out and get a job, of course it is unhandy down there to get back and forth from Fort Smith when Buddy didn't drive a car back and forth; and Buddy would have been off so much that they wouldn't have kept him.

\* \* \* \* \* \*

"Q. The only other employment is marshal or policeman.

"A. They have got to have a policeman. They would have hired Buddy but they can't hire a man that can't hear because they really need night watchman more than they do a policeman. It takes somebody with ears."

Mr. Herbert Lewis, a fellow employee of Mr. Kuykendall and a steel worker, testified beginning at page 62:

"Q. At that time was Buddy able to do the work of a steelhand?

"A. You ought to work with him.

"Q. He was able to do what there was to do?

"A. Buddy was dangerous to work with at that time on account of his hearing. He had plenty of strength. He was the hardest working man I ever worked for.

\* \* \* \* \* \*

"Q. In 1948 when you were standing on the wall in the metal industry wouldn't it have been dangerous to have worked out over the water?

"A. I wouldn't have worked with him, no.

"Q. If I understood you in '43 you didn't mind working with him so bad because you watched him all the time. Since 1948 have you observed him around Mulberry there and known him?

"A. Yes, standing out in front of the store in the sunshine, bareheaded, waving at people. Yeah I see Buddy everytime I go to town nearly.

"Q. Do you know whether or not he has done any work since that seawall?

"A. I haven't seen him do it.

"Q. Or do you know of him doing any?

"A. No, I live right there in a block of him. He comes up to the house once in awhile, waves at me and I hate to try to talk to him. I kind of go by motions to talk to him a little bit."

The record also contains the following statement by Dr. R. E. Crigler of the Holt-Krock Clinic of Fort Smith, Arkansas, as to the existence of the plaintiff's impairment prior to 1951.

"I have personally known one Mr. Buddy Kuykendall for forty years. The only work he has done, to my knowledge, to earn a livelihood during this time was steel construction work. Because of the loss of hearing in one ear and almost complete loss of hearing in the other ear, he was forced to retire in 1948 since he could not pass a physical examination on any steel construction job.

"This man is totally deaf in his right ear and he cannot hear normal conversational voice three feet distant with a hearing aid.

"This man has no other vocation, neither has he ever had any experience in any other line of work. The only vocation and training he has ever had was in steel construction. In my personal opinion he is totally and permanently disabled of ever

being able to return to such type of work, or of following any occupation of a gainful and substantial nature whereby he might earn a living."

Dr. Kirksey in a letter dated August 12, 1963, also stated that he knew plaintiff in 1948, and that his hearing condition was the same then as now.

The defendant Secretary contends in his brief that the decision of the hearing examiner is supported by substantial evidence. The hearing examiner based his denial of disability benefits upon the premise that the plaintiff had not met his burden of proof. As the issue developed by the pleadings and evidence in the instant case is narrowed to the question of fact, i. e., the existence of the plaintiff's impairment on or before June 30, 1951, the court does not feel it necessary to develop an elaborate discussion of the principle of substantial evidence nor the relative burdens of proof of the plaintiff and the defendant Secretary. See Hawkins v. Celebrezze, supra.

Although opinion evidence of the medical experts that an impairment existed more than ten years prior to their examination might not amount to substantial evidence to support the plaintiff's contention, as contended in the defendant's brief, they are, however, corroborated by the testimony of the plaintiff's wife and fellow employee, as well as the testimony of the witness Kramer. Further, Dr. Crigler stated he personally knew the plaintiff in 1948 and that the condition was then present.

As heretofore stated, the medical evidence conclusively establishes the present existence of an impairment of a permanent and indefinite duration. The only evidence adduced by either party supports the plaintiff's contention that this impairment existed at the time alleged in the complaint. This is not a case in which there is evidence that could be weighed by the defendant either for or against the plaintiff's contention—actually the only evidence contained in the record was adduced by the plaintiff and supports his contention.

The court is of the opinion that the decision of the hearing examiner that the plaintiff's medically determinable impairment, which precluded his engaging in any substantial gainful activity, did not exist prior to June 30, 1951, and adopted and affirmed by the defendant Secretary is not supported by substantial evidence. Therefore, an order is being entered today denying the defendant Secretary's motion for summary judgment and granting plaintiff's motion for summary judgment, with instructions to the defendant Secretary that the plaintiff be granted disability benefits as prayed in his complaint.