Joseph D. MILLER, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 79–1199N.

United States District Court, W. D. Pennsylvania.

April 17, 1980.

E. David Harr, Greensburg, Pa., for plaintiff.

John P. Panneton, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## SUPPLEMENTAL MEMORANDUM ORDER

ROSENBERG, District Judge.

On August 29, 1979, this action was referred to United States Magistrate Ila Jeanne Sensenich in accordance with the Magistrate's Act, 28 U.S.C. § 636(b)(1), and the Local Rules for Magistrates. The Magistrate's Act allows the parties ten (10) days from the date of service to file written objections to a report and recommendation.

The Magistrate's report and recommendation was filed on March 12, 1980, and recommended that the plaintiff's Motion for Summary Judgment be denied, that the defendant's Motion for Summary Judgment be denied, and that the action be remanded to the Secretary for reconsideration. Service of the report and recommendation was made on plaintiff's counsel on March 13th, and on defense counsel on March 13th. By court order dated March 31st, the parties were allowed until March 31st to file objections. Objections were filed by the defendant on March 31st.

I have carefully examined the Magistrate's report and recommendation, as well as checked the record for verification of the factual conclusions set forth by the Magistrate. I find these to be specifically and pertinently accurate.

 While the Secretary contradicts the meaning of *Lewis v. Califano*, 616 F.2d 73, C.A. 3, 1980, and argues that the burden is upon the plaintiff in a case such as this to prove liability on the part of the Secretary, as well as to procure a re-examination in light of additional evidence as may have been presented, I deem the Magistrate's analysis of the evidence as presenting the facts in the case originally and before the Administrative Law Judge to be basic. It is true that the Secretary through the processes of the Administrative Law Judge, the Council and eventually the Secretary giving final approval of the decision, is obligated to determine the credibility of witnesses and whether or not a plaintiff has by appropriate evidence established a right to benefits under the statute. But the law

does not rest there; the Administrative Law Judge, the Council and the Secretary must have evidence which supports the findings eventually made by the Secretary, and that the reviewing court is bound by the findings of the Secretary if they are supported by "substantial evidence". *Kuykendall v. Celebrezze*, 231 F.Supp. 890 (W.D.Ark.1964); *Collier v. Celebrezze*, 240 F.Supp. 274 (S.D.Idaho, 1965); *Baith v. Weinberger*, 378 F.Supp. 596 (E.D.Pa.1974). However, the review court also has a legal responsibility.

Judge Kalodner in *Goldman, Administrator of the Estate of Goldman v. B. Folsom*, 246 F.2d 776, 778, C.A. 3, 1957, said:

"In discharging that duty we must keep in mind, as adjured by the Supreme Court, that 'courts must now assume more responsibility for the reasonableness and fairness' of decisions of federal agencies 'than some courts have shown in the past' and 'reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function.' *Universal Camera Corp. v. National Labor Relations Board*, 1951, 340 U.S. 474 [475], 490, 71 S.Ct. 456, 466, 95 L.Ed. 456."

■ It is the duty of the reviewing court to see to it that such a determination is not based upon speculation or surmise. There must be both credible and substantial evidence upon which a finding by the agency is based, otherwise it has no validity in law.

■ In the present instance, the Administrative Law Judge stated that the plaintiff's evidence was credible and substantial. The Administrative Law Judge found the plaintiff's testimony of back discomfort and pressure to be credible, but concluded this did not restrict his physical ability to perform sedentary work. I have searched the record to ascertain just where the Administrative Law Judge had any evidence before him which would support such a finding. Thereafter the Administrative Law judge depended upon the testimony of Dr. Karn, the vocational expert, who stated that if the Administrative Law Judge should find that the plaintiff could lift up to "10 pounds occasionally" or "could sit up to an hour and a half", even though he had some anxiety and depression, that there was a "fairly wide range of sedentary jobs" the plaintiff could perform which would include inspector jobs, assembly jobs, checking jobs and the like, production jobs, loading film for developing and processing, preparing orders for mailing, writing up orders, working at a semi-clerical job and packing orders for shipment. These were jobs which were usually performed in a sitting position, although such work did not require a person to sit. However, such an employee would not be able to walk around or leave his work station. All of these jobs exemplified jobs which the plaintiff testified he could not do because of his physical limitations and restrictions. No doctor testified to the fact that the testimony of the plaintiff was incredible, or contrary to medical knowledge. Since such contradictions exist in the record they present a deficiency in any support upon which the findings of fact were based by the Administrative Law Judge and as then were approved by the Council, and eventually the Secretary.

■ Under these circumstances, the law will not support the defendant's contention. The law was not intended to deal injustices to a needy petitioner in social security cases. It was intended that the Secretary should look fairly and reasonably upon the basic claims as made by those who suffer pain and inability. It is for the Secretary to examine credibility and set forth the facts specifically, so that the district court on appeal might be able to see the true facts of the case for a fair and just determination.

Under these circumstances, the Report and Recommendation of the Magistrate will be respected and adopted together with this Supplemental Memorandum as the opinion of this Court. The case will be remanded for reconsideration by the Secretary in accordance with the Report and Recommendation of the Magistrate and this Supplemental Memorandum of this court.

MAGISTRATE'S REPORT AND
RECOMMENDATION

March 12, 1980

ILA JEANNE SENSENICH, United
States Magistrate.

## I. *RECOMMENDATION*

It is recommended that plaintiff's Motion
for Summary Judgment be denied, that de-
fendant's Motion for Summary Judgment
be denied, and that the action be remanded
to the Secretary for reconsideration.

## II. *REPORT*

This is an action timely filed under the
Social Security Act, 42 U.S.C. Section
405(g), to review a final decision of the
Secretary of the Department of Health, Ed-
ucation and Welfare, granting plaintiff a
closed period of disability from October 18,
1977, to October 30, 1978.

The issue in the present appeal is whether
there is substantial evidence to support the
findings upon which the Secretary based his
conclusion that plaintiff's disability due to
status post-lumbar herniated disc, and a
shoulder injury ceased on October 30, 1978.[1]
Substantial evidence has been defined as
"such relevant evidence as a reasonable
mind might accept as adequate to support a
conclusion." *Richardson v. Perales*, 402
U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d
842 (1971); *Lewis v. Califano*, 616 F.2d 73
(3d Cir. 1980).

Plaintiff was born on August 10, 1939, is
40 years of age, is married, and has three
children at home. He graduated from high
school and took a course as a machinist at
the high school, apparently subsequent to
his graduation. He served in the Navy
from January, 1962, to February 27, 1964,
where he did mostly plate work, including
maintenance planning, logging flight times
on engines, and working with engine parts.
He worked at Latrobe Brewery for approxi-
mately 13 years—first as a truck driver and
then as a bottler. Dr. Karn, the vocational
expert, described his work as a bottler as
demanding, semiskilled, heavy work (Tr.
69).

Plaintiff has had two major surgical op-
erations on his back. In 1973 Dr. R. Norton
Hall performed a left hemi-lumbar laminec-
tomy at L5–S1 after plaintiff had a period
of intermittent attacks of low back and left
sided pain. Plaintiff returned to work af-
ter that surgery and apparently continued
working until he was injured in an accident
on October 18, 1977, the date the Secretary
found his disability commenced. On that
date he sustained a fall from a height of
over ten feet while working at the brewery,
injuring both his right shoulder and his
back. On December 6, 1977, he underwent
surgery—excision of a mass to his right
shoulder at Latrobe Area Hospital (Tr. 141).
During the hearing he testified that his
shoulder bothered him once in a while.
Sometimes it would stiffen up (Tr. 48). He
could reach his arm up but he was not able
to grip with his arms and hands as he could
before his injury. He had pain in his arm
when he would have to lift anything (Tr.
49). He would also have pain with changes
of the weather. He could lift ten pounds of
potatoes once or twice but he could not hold
it for any length of time.

Plaintiff was hospitalized from March 13
to 15, 1978, at Westmoreland Hospital in
Greensburg for a myelogram (Tr. 132). Af-
ter the myelogram Dr. Hall instituted con-
servative therapy as an outpatient (Tr. 133,
166). However, plaintiff did not obtain re-
lief from his pain. At one point he at-
tempted to return to work but was sent
home because of his pain. Plaintiff again
returned to work in June of 1978 but was
unable to do the heavy lifting that was
required. On July 25, 1978, he had a bilat-
eral lumbar laminectomy from L4 through
S5–S1 with decompression of the dural
sheath and lysis of adhesions. On August
24, 1978, Dr. Hall expressed his opinion that
plaintiff would be totally disabled for three
to six months from the date of his surgery
(Tr. 130). Since the surgery was performed
in July of 1978 and the Secretary found
that plaintiff's disability ceased in October
of 1978, the Secretary found that plaintiff's

---

1. 42 U.S.C. Section 405(g).

disability ceased within three months of his surgery. However, on March 8, 1979, Dr. Hall reported that plaintiff would be re-evaluated for returning to work in May (Tr. 166). On March 29, 1979, Dr. Hall reported that plaintiff was still disabled as a result of his surgery in July of 1978 (Tr. 167). On June 8, 1979, Dr. Hall reported that plaintiff had been sent to Dr. Searfoss on April 30, 1979, to have a body cast reapplied. The cast was removed on June 4, 1979, but plaintiff was still having a lot of pain. He was referred back to Dr. Searfoss for a fusion. On June 25, 1979, Dr. Searfoss reported that plaintiff did not demonstrate any significant improvement with the body cast and he did not feel plaintiff was a suitable candidate for a fusion and had not pursued any additional medical follow-up.

The record also includes a report by Dr. Frank L. Rommel, who examined the plaintiff on October 14, 1978. Dr. Rommel reported extensively on plaintiff's degree of extension and flexion and expressed his opinion that plaintiff was unable to do any heavy lifting and commented that he was still under the treatment of Dr. Hall, a neurosurgeon (Tr. 137).

Plaintiff's counsel has submitted with his Motion for Summary Judgment a copy of a report of Dr. Selim El-Attrache, an orthopedic surgeon, who reported on December 18, 1979, that x-rays revealed limitations in extension, flexion, and motion and concluded that plaintiff was disabled to return to work "in commerce and industry." It is recognized that the report of Dr. Hall dated June 8, 1979, and the reports of Dr. Searfoss and Dr. El-Attrache were not available to Judge DiCenzo at the time of his decision.

During the hearing on February 15, 1979, plaintiff testified that he was receiving workmen's compensation (Tr. 34, 100–101) as a result of his accident at work on October 18, 1977. He testified that as a result of that accident he was unable to lift objects or stand in one place or sit too long. He has to sit in straight backed chairs (Tr. 40). He could probably pick up a ten pound bag of potatoes once or twice but that was all. He testified that as a result of sitting during the hearing both of his legs were numb clear down to his toes (Tr. 41). When his legs get numb he has to get up and walk around. His legs are numb when he wakes up in the morning and it takes him about ten minutes of walking before the numbness leaves. As a result of the injury his nerves were bad and he felt everything seemed to have gone sour on him. He was not himself any more (Tr. 42). Since his last operation he had had difficulty urinating and moving his bowels. He had a constant feeling of pressure in his low back—as if someone had their finger in his back clinching him (Tr. 43). He was taking a medication, penerol, for the pain. His right shoulder was sore and stiff. It gets stiff whenever he uses it. During a typical day he watches television, plays cards with his daughter, and sometimes takes his son to a movie (Tr. 44). He can drive the car although he only drives about ten miles a week. He takes his son to school. His wife had driven to the hearing (Tr. 32).

Plaintiff testified that after his surgery in 1973 he had been unable to return to his former work at the brewery as a truck driver. His legs start to go numb on him after about 15 minutes of sitting. In order to get relief he has to walk around. Stretching is not sufficient (Tr. 59). When he gets up in the morning he has numbness in his lower back, buttocks, and his legs radiating down to three toes on each foot. He has needles going through them (Tr. 61). Dr. Hall told him not to walk any further than around the block. When he took his son to the movies he had to keep squirming (Tr. 63).

During the hearing plaintiff asked if he could get up and stretch his legs (Tr. 63–64). The therapy heat treatments he took gave him relief while he was receiving the treatments but after they were over he felt the same way he did when he arrived. He did not feel any relief. His most comfortable position was lying down and curling up in a ball with his legs under his chest (Tr. 64). He sleeps with a bed board and has to sit in a hard chair. He has a special hard

plastic seat for his car. He has a constant feeling of pressure in his back, like someone is pushing something hard against it (Tr. 65).

Plaintiff's wife testified that plaintiff would try to help her with things around the house like washing dishes but he could not do it (Tr. 83). He would frequently walk away while they would be talking because he could not sit or stand too long (Tr. 83). She observed that he was in distress. He could only stand for about five minutes and sit for twenty minutes to a half hour (Tr. 84). After that he has to get up and move around (Tr. 85).

Dr. Karn, the vocational expert, testified that assuming that plaintiff has all the limitations, restrictions, and pain as alleged in his testimony, he would not be able to perform any of his previous jobs or any other jobs existing in the national economy (Tr. 71). However, if the judge found that plaintiff was restricted from all heavy lifting but that he could lift up to ten pounds occasionally, could sit up to an hour and a half, had to alternate between sitting and standing, and had some anxiety and depression, then he felt there was a fairly wide range of sedentary jobs plaintiff could perform (Tr. 72). These would include working as a flow set operator, a thermostat inspector, a final tester, a bench inspector, or a general assembler in the manufacture and checking and inspection of thermostatic controls and related devices for gas appliances (Tr. 73). He also felt plaintiff could work in a production job, an assembly job, or an inspection job in the manufacture of electrical contact points. Other jobs would include loading film for developing and processing, preparing orders for mailing, writing up orders at Perfection Photo in Greensburg, working at a semi-clerical job which involved credit checks, packing orders and preparing them for shipment. Plaintiff could also work as an inspector or packer/selector in the glass and china industry. Under examination by plaintiff's attorney Dr. Karn testified that the jobs he had described were usually performed in a seated position although the work did not require the person to sit. However, plaintiff would not be able to walk around or leave his work station. Although the jobs described were not fast paced assembly lines, there were production requirements (Tr. 77).

Judge DiCenzo reviewed the evidence, found that plaintiff's allegation of back discomfort and pressure was credible, but found that it did not restrict his physical ability to perform sedentary work. Therefore, he determined that plaintiff became disabled on October 18, 1977, but that his disability ceased on October 30, 1978 (Tr. 21). The Appeals Council denied plaintiff's request for review, commenting that the report of Dr. Hall of June 8, 1979, and the report of Dr. Searfoss of June 25, 1979, failed to establish, on the basis of laboratory and clinical findings, that plaintiff's back impairment was of greater severity than depicted by the evidence of record which was considered by Judge DiCenzo in reaching his decision of May 10, 1979 (Tr. 4–5).

Review of this decision is extremely difficult. Unfortunately, most of the medical reports are somewhat ambiguous. Although Dr. Rommel, on October 14, 1978, upon whom Judge DiCenzo appears to have relied to a great extent in finding plaintiff's disability ceased in October of 1978, expressed his opinion that plaintiff could not do any heavy lifting, he expressed no opinion as to plaintiff's ability to engage in other activities. Further, although his report discussed in detail his findings as to plaintiff's extent of flexion and extension, neither his report nor any other information contained in the record reveals what is considered normal and the extent of plaintiff's deviation from normal. Further, Dr. Rommel commented that plaintiff was still under the treatment of Dr. Hall. In August of 1978 Dr. Hall had commented that he anticipated plaintiff's disability to be from three to six months following his surgery. However, in March of 1979 Dr. Hall expressed his opinion that plaintiff was still disabled and would be reevaluated for returning to work in May. Dr. Hall's two reports in March of 1979 would appear to supersede his general estimate in August of

1978 of an anticipated disability of three to six months and it would also appear to supersede the opinion of Dr. Rommell in October of 1978 indicating only that plaintiff was not capable of heavy lifting. Although in March of 1979 Dr. Hall had reported that he would reevaluate plaintiff for returning to work in May, in June he reported that plaintiff had been placed in a body jacket cast from April 30 to June 4, 1979. It is hard to imagine how plaintiff would be able to perform the jobs described by Dr. Karn while he was in a body cast. Further, the decision to have plaintiff placed in a body cast would appear to corroborate his testimony of severe pain. It is recognized that the June 8, 1979, report of Dr. Hall, in which he advised of plaintiff's placement in the body cast, was not available to Judge DiCenzo at the time of his decision. However, that report would appear to cast a substantially different light on the extent of plaintiff's impairment. The Appeals Council's finding that the June 8, 1979, report of Dr. Hall failed to establish on the basis of laboratory and clinical findings that plaintiff's impairment was of greater severity than depicted by the evidence of record appears to overlook the fact that Dr. Hall had performed two laminectomies on plaintiff after having myelograms taken and who was plaintiff's primary treating physician. As has already been observed, the placing of plaintiff in a body cast for a period in excess of one month would seem to substantially change the picture concerning plaintiff's impairment.

The report of Dr. Searfoss is somewhat troublesome in that he reported that plaintiff did not experience any significant improvement while in the body cast but he did not feel plaintiff was a suitable candidate for fusion and did not pursue any additional medical follow-up. In light of the reports of Dr. Hall and Dr. Searfoss in June of 1979, the report of Dr. El-Attrache in December of 1979, which was submitted with plaintiff's Motion for Summary Judgment, is important. Dr. El-Attrache found that x-rays revealed plaintiff's impairment and concluded that plaintiff was disabled to work "in commerce and industry." Cer-

tainly all the jobs described by Dr. Karn were in commerce or industry. Judge Di-Cenzo found that plaintiff's testimony concerning his back discomfort and pressure was credible and Dr. Karn expressed his opinion that if plaintiff's testimony were true there was no work he could perform. Judge DiCenzo appears to have accepted plaintiff's testimony that he could not either sit or stand for any length of time but had to periodically walk around. Dr. Karn testified that the jobs he had described would not permit him to walk around. He would have to stay basically at his machine and would have to keep up his production rate. The United States Court of Appeals for the Third Circuit has indicated that a finding of disability by another agency is entitled to substantial weight and that it satisfies plaintiff's burden of proof. See *Lewis v. Califano*, 616 F.2d 73 at 76 (3d Cir. 1980); *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979). The judge did not discuss the fact that plaintiff was found totally and permanently disabled for purposes of workmen's compensation and was still receiving benefits at the time of the hearing.

Judge DiCenzo carefully and conscientiously reviewed the evidence and testimony. However, the subsequent reports of Dr. Hall, Dr. Searfoss, and Dr. El-Attrache cast a substantially different light on plaintiff's claim. Therefore, it is recommended that the parties' Motions for Summary Judgment be denied and that the action be remanded to the Secretary for reconsideration.

In accordance with the Magistrates Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and Rule 4 of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.