**Barbara BERRY, Plaintiff,**

**v.**

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 89–1314.**

United States District Court, W.D. Pennsylvania.

May 11, 1990.

Edward J. Abes, Edward Jaffee Abes & Associates, P.C., Pittsburgh, Pa., for plaintiff.

Mary Beth Kotcella, Asst. U.S. Atty., Pittsburgh, Pa., for defendant.

## MEMORANDUM ORDER

COHILL, Chief Judge.

This action was referred to United States Magistrate Gary L. Lancaster in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 3 and 4 of the Local Rules for Magistrates. On April 26, 1990, the Magistrate filed his Report, which concluded that the case should be remanded to the Secretary for further consideration. Defendant filed timely objections to the Report. After *de novo* review of the pleadings and documents in the case, together with the Magistrate's Report and objections thereto, the following ORDER is entered this 11th day of May, 1990:

The case is remanded to the Secretary for further consideration in accordance with the Report filed by Magistrate Lancaster which is adopted as the Opinion of the Court, forthwith.

## REPORT

GARY L. LANCASTER, United States Magistrate.

Plaintiff brought this action pursuant to the Social Security Act ("Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking a judicial review of the final decision of the Secretary of Health and Human Services denying her application for disability insurance benefits and Supplemental Security Income. Before the court are the parties' cross motions for summary judgment. Because the Secretary committed an error of law in reviewing this case, the decision should be reversed and the case remanded for further proceedings consistent with this Report.

### I. PROCEDURAL HISTORY

On February 19, 1985, plaintiff filed an application with the Social Security Admin-

istration for disability insurance benefits and supplemental security income, alleging disability based on severe inflammatory arthritis, anxiety and associated illness. The Secretary denied her application both initially and on reconsideration. Following a series of events during which plaintiff's application was denied and reconsidered by the agency, plaintiff then requested and, on August 2, 1988, received a hearing before an Administrative Law Judge ("ALJ"). Upon hearing, the ALJ determined that plaintiff has been disabled since March 31, 1988, but not prior thereto by reason of her performance of substantial gainful activity as a foster parent. The Appeals Council denied plaintiff's request for review on the issue of the date of onset of disability; accordingly, the ALJ's decision became the final decision of the Secretary.

Plaintiff commenced the present action on June 13, 1989. She contends that the Secretary's decision is not supported by substantial evidence and seeks an order reversing the Secretary's decision or, alternatively, vacating the decision and remanding the case to the Secretary for a new hearing. Defendant seeks an order affirming the Secretary's decision.

## II.  STANDARD OF REVIEW

■■■  A district court's review of the Secretary's findings is limited to a determination of whether the findings are supported by "substantial evidence." *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981) (*quoting Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. at 1427). The court may neither reweigh the evidence, nor may we reverse the Secretary merely because we would have decided the claim differently. *Cotter v. Harris,* 642 F.2d at 705. Our reviewing authority is confined to an examination of the entire record to determine whether there is a rational basis for the Secretary's conclusions. *Miller v. Harris,* 490 F.Supp. 1184 (W.D.

Pa.1980). When inconsistencies appear in the evidentiary record, the Secretary may resolve issues of credibility, but in doing so, it must provide some rationale for the manner in which the inconsistencies are ultimately resolved. *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983). With these concepts in mind, we turn to the merits of the claim.

## III.  DISCUSSION

It is not necessary to review the entire medical record; it is sufficient to state that since at least May, 1986, and possibly earlier, the record reflects a well-documented history of severe psychological illness. However, because plaintiff served as a foster parent for Allegheny East Mental Health/Mental Retardation Center (AEMH/MR), the ALJ concluded that plaintiff's disability related back only until March, 1988 when her tenure as a foster parent terminated. The ALJ reasoned that, regardless of any documented disability, plaintiff was gainfully employed prior to that time.

### A.

■■■  An individual who engages in "substantial gainful activity" during the period of claimed disability is not eligible for benefits, regardless of the nature of the individual's medical condition. *See* 20 C.F.R. §§ 404.1520(b), 404.1571. "Substantial gainful activity" is a term which includes two components: substantial and gainful. "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). Generally, the Secretary does not consider activities such as self-maintenance, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity. *Id.* § 404.1572(c). "Gainful work activity is work activity that [the claimant does] for pay or profit." *Id.* § 404.1572(b). The Secretary has promulgated income guidelines which establish a presumption of substantial gainful activity. Average monthly earnings totalling more than $300 create

such a presumption. *See id.* §§ 404.-1574(b), 416.974(b).

Between June 10, 1977 and March 31, 1988, plaintiff served as a foster parent for AEMH/MR and cared for two foster children. Plaintiff's foster daughter was placed in her home on June 10, 1977, where she remained until April, 1988 when the girl died at the age of 20 years. The girl was mentally retarded and suffered Down syndrome. During the same period, plaintiff also cared for a foster son. The record is not clear as to the dates he was in her home. In return for her contracted services, plaintiff received room and board reimbursement for each individual foster child and a "stipend" of $400 per month per child. Plaintiff acknowledges that her earnings prior to March 31, 1988 create a presumption that she engaged in substantial gainful activity.

Upon reviewing the ALJ's decision, it appears that once he determined plaintiff had met the income guidelines set forth in the regulations, the analysis ended. This had the effect of creating an irrebuttable presumption that plaintiff was engaged in substantial gainful activity. While meeting the income level creates a presumption, it is a presumption which can be rebutted by evidence of the nature of the applicant's work, the conditions of employment and the adequacy of the applicant's performance. *See* 20 C.F.R. § 404.1573; *Anderson v. Heckler,* 726 F.2d 455, 456 (8th Cir.1984). Thus, because the unrefuted evidence that plaintiff received $400.00 per month for her work as a foster parent supports a finding that plaintiff engaged in "gainful" activity, the ALJ erred in failing to consider further whether plaintiff engaged in "substantial" activity. This two-part analysis has been required of the Secretary in numerous cases. *See Walker v. Bowen,* 826 F.2d 996 (11th Cir.1987) (applicant's work as a part

time school bus aide did not establish per se that she could do a full range of work normally involved in light or sedentary jobs for eight hours daily); *Van Horn v. Heckler,* 717 F.2d 1196, 1199 (8th Cir.1983) (gainful work in a sheltered workshop must be viewed to its actual substantiality); *Scanlon v. Richardson,* 370 F.Supp. 1141 (W.D.Pa.1972) (applicant's daily performance of work-related activities was limited and, thus, insufficient to establish "substantial" activity); *Wilson v. Richardson,* 455 F.2d 304 (4th Cir.1972) (sporadic and transitory work may show incapacity to engage in substantial gainful activity); *Barats v. Weinberger,* 383 F.Supp. 276 (E.D.Pa.1974) (same); *Icenhour v. Weinberger,* 375 F.Supp. 312 (E.D.Tenn.1973) (same). Thus, the court concludes that the ALJ erred in terminating his analysis upon a finding that plaintiff had met the regulation presumption, without also viewing the actual circumstances involved.

### B.

The Secretary's brief did not address this issue of law, as it was not raised directly by the plaintiff, but rather the Secretary addressed the substantiality of evidence issue.

In support of its position that plaintiff was engaged in substantial work activity, the Secretary refers to the fact that the job of foster parent is listed in the *Dictionary of Occupational Titles* (D.O.T.) which describes the job as significantly more than completing household tasks.[1] Further, the Secretary infers that because plaintiff's foster daughter had Down syndrome and a heart condition, plaintiff's responsibilities must have been more than provision of "minimal" care. This assertion is not supported by evidence of record. In fact,

---

**1.** According to the D.O.T., a foster parent:

Rears homeless or parentless children in own home as members of family: Organizes and schedules activities, such as recreation, rest periods, and sleeping time. Insures child has nutritious diet. Instructs children in good personal and health habits. Bathes, dresses, and undresses young children. Washes and irons clothing. Accompanies children on out-

ings and walks. Disciplines children when required. May return children to parents' home during weekends and holidays. May work under supervision of welfare agency. May prepare periodic reports concerning progress and behavior of children for welfare agency.

*D.O.T.,* at 224 (4th ed. 1977).

946

plaintiff testified that her foster daughter assisted her in many ways.

Finally, the Secretary refers to a letter from Allegheny East Mental Health/Mental Retardation Center which describes plaintiff's responsibilities as a foster parent to establish the substantiality of the role.[2] Again, contrary to the Secretary's assertion, the agency describes the role as very similar to that of a natural parent. To this court's knowledge, no case has held that fulfilling the role of a natural parent is deemed the equivalent of engaging in substantial activity, particularly without viewing the actual facts of the situation.

Plaintiff's foster daughter was between 16 and 20 years old during the period of time in dispute here. While the record is silent as to this issue, the Court may note that a Down syndrome young adult may be very capable of attending to her personal needs and daily hygiene.[3] In such case, plaintiff's responsibilities to her foster daughter could well have been more in the nature of maintaining her home and providing companionship and guidance. If the record bears this out, these activities do not necessarily show plaintiff's ability to engage in "substantial" activity.

The Secretary's position regarding the substantiality of plaintiff's work activity is particularly troubling because it is not based on facts of record, but rather upon inferences the Secretary wishes the court to make based on the presumed nature of plaintiff's work as a foster parent to a Down syndrome person. The Secretary

must meet its burden by substantial evidence of record. Neither the Secretary, nor the court, may engage in presuming facts that are not substantiated by the record.

Accordingly, for the reasons set forth herein, the Secretary's decision should be reversed and the case remanded[4] for further proceedings consistent with this Report.

Dated: April 25, 1990

2. The letter stated, in relevant part:
   Ms. Berry's responsibilities as a foster parent are very similar to those of a natural parent, in that she has and continues to provide a supportive home for those children placed with her. She plays an important role in teaching self-help, daily living skills and socialization skills; monitoring and seeking all proper medical and dental care; monitoring school and recreational programs along with integrating the child into the family routine and system.

3. Down syndrome is the subject of public interest and education. As one author related:
   Generally speaking, children with Down syndrome can grow up to function semi-independently. With the trend toward community group homes that foster independence and self-reliance, fewer and fewer people with

Down syndrome are remaining at home. They take care of themselves, hold jobs, and enjoy family and friends. Achieving independence and self-reliance, however, takes a lot of effort. The essential foundation that will enable children with Down syndrome to grow into capable individuals is laid through hard work in the first years of life.
*Babies With Down Syndrome: A New Parents Guide* (K. Stray–Gundersen, ed. 1986), at 16–17.

4. Remand is appropriate if the Secretary applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *See Davis v. Heckler,* 748 F.2d 293 (5th Cir.1984); *Wier v. Heckler,* 734 F.2d 955 (3d Cir.1984).